**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| FLOWER MANUFACTURING, LLC, | Case No. 3:18-cv-00547 |
| Plaintiff, | Honorable James G. Carr |
| | Magistrate Judge James R. Knepp, II |
| V. | |
| CARECO, LLC, | **PLAINTIFF'S OPENING BRIEF REGARDING DISCOVERY DISPUTE** |
| Defendant. | |

Defendant CareCo, LLC ("CareCo") refuses to provide vitally important information and documents to Plaintiff Flower Manufacturing, LLC ("Flower Manufacturing") in discovery in this case, despite the fact that the information and documents requested are routinely exchanged in trademark cases such as this. CareCo relies on an impermissibly narrow definition of relevance and meritless objections to withhold from production sales information, marketing and customer information, and more. The Court should compel production of the requested information.

### I.     FACTUAL BACKGROUND AND THE DISCOVERY AT ISSUE

On March 9, 2018, Flower Manufacturing filed this suit, claiming trademark infringement under the Lanham Act and other related claims based on CareCo's unauthorized use of an infringing mark to sell air freshener products. Flower Manufacturing manufactures and distributes air freshener products for automobiles under the CHERRY BOMB mark and similar registered trademarks (the "BOMB marks"). CareCo markets a variety of air freshener products under the junior SCENT BOMB mark, a mark that closely resembles Flower's BOMB marks. In its Complaint, Flower Manufacturing alleges that the use of the SCENT BOMB mark in conjunction with all of the air freshener products marketed by CareCo infringes upon Flower Manufacturing's trademark and otherwise violates federal and state law. Among other damages, Flower

30159253.1

Manufacturing seeks a disgorgement of all of CareCo's profits from the sale of products using the infringing mark.

The parties began to conduct discovery pursuant to the Court's scheduling order. On November 5, 2018, Defendant CareCo, LLC ("CareCo"), served its responses to Plaintiff Flower Manufacturing, LLC's ("Flower Manufacturing") first sets of interrogatories and requests for production of documents. (*See* Exhibits 1 & 2.) In the responses, CareCo withheld certain relevant information.

First, CareCo withheld sales information responsive to Request for Production No. 15. This request seeks, "For each product under the SCENT BOMB MARK, DOCUMENTS sufficient to show annual sales, by dollar value and units sold, since March, 2009." Ex. 2. In response, CareCo objects, asserting that Request for Production No. 15 "seeks documents and information not relevant to the claims or defenses in this case in that [CareCo] sells multiple products that are nothing like [Flower Manufacturing's] products and are not likely to cause any confusion as to the source of the products." *Id.* Based on this objection, CareCo produced only sales records for its hanging circle products and withheld sales data related to its remaining product lines.

Second, CareCo objects to a number of requests on the basis that the requests "seek to have [CareCo] furnish information that is proprietary to [CareCo] and contain confidential information" and that "the disclosure of [the requested information] would give [Flower Manufacturing] and any other competitor an unfair competitive advantage to which it is not entitled." (Ex. 1 at pp.6-8 (responses to Interrogatories Nos. 4, 5, 6, and 7) and Ex. 2 at pp.6-8, 11 (responses to Requests for Production Nos. 5, 6, 7, 9, and 15).) These requests seek information regarding the manufacturer(s) of CareCo's products, CareCo's marketing channels and strategies, and CareCo's customers. CareCo does not contest the relevance of these requests but instead seems to object

2

only on the grounds that the information is confidential.

On January 30, 2019, counsel for Flower Manufacturing sent a letter to counsel for CareCo, requesting that CareCo withdraw the above objections and promptly produce responsive documents.  Counsel for Flower Manufacturing also offered to engage in discussions to stipulate to a protective order to facilitate the production of any confidential information.  CareCo refused to supplement its discovery responses, forcing Flower Manufacturing to seek the Court's assistance in resolving this dispute.  Pursuant to the Court's request at the February 13, 2019 telephonic status conference, Flower Manufacturing submits this brief in support of its request that CareCo be compelled to produce the requested information.

## II.  ARGUMENT

### A.  CareCo's Objections Constitute an Improper Attempt to Bifurcate This Dispute

As to the production of sales data, CareCo argues that (1) sales data for non-hanging circle products is not relevant to this dispute and (2) even if such data is relevant, it should only be produced after a ruling on liability.  Focusing first on the second point, CareCo demands—belatedly and without proper motion—that this dispute be bifurcated.  This request should be denied.

In simple trademark disputes such as this, courts generally refuse to bifurcate liability and damages discovery and ultimate determinations.  For example, in *Nylok Fastener Corp. v. Industrial Nut Corp.*, 122 F.R.D. 512 (N.D. Ohio 1988), the court denied the defendant's request to bifurcate the trial and for a protective order preventing discovery on damages until after a liability determination.  In denying the motions, the court stated that any concern about issue confusion had no merit in a trademark case, where liability and damages are routinely considered together: "This trademark infringement action is between two parties and involves the well-defined question whether likelihood of confusion exists between two products. These issues are routinely

3

submitted to juries, who customarily consider damages in the same proceeding." *Id*. at 513; *see also, e.g.*, *Rocky Brands, Inc. v. Red Wing Shoe Co.*, 2010 WL 11538541 (S.D. Ohio Jan. 4, 2010) (denying bifurcation for a variety of reasons, including that defendant could not establish "prejudice[] by trying all issues in a single trial, as is done in most cases"). *Cf. Tween Brands Investment, LLC v. Bluestar Alliance, LLC*, 2016 WL 5216632 (S.D. Ohio Sept. 22, 2016) (granting motion to compel sales figures because "counterclaim for trademark infringement makes relevant: how a mark or design was used, sales figures relating to the mark, and information regarding consumers' perception of the mark"). Here, in this simple trademark dispute between two parties and claims related to a handful of similar air freshener products, there is similarly no reason to justify bifurcation.

Moreover, CareCo's demand is fundamentally unfair. The parties have been conducting discovery under a single schedule without bifurcation for several months. On November 8, 2018, in a Second Set of Requests for Production, CareCo requested that Flower Manufacturing "Produce DOCUMENTS EVIDENCING all of YOUR sales, by product name, dollar value, units sold, and by month and year, of air freshening products since January 1, 2008." In December, Flower Manufacturing responded without objection, producing more than 20 pages of sales records. To now decide that sales data is irrelevant to this portion of the case and thus withhold its own data creates an informational disparity between the parties that unduly prejudices Flower Manufacturing and puts CareCo at a significant advantage in the conduct of depositions and other remaining discovery, in the assessment of any settlement negotiations, and in any dispositive motion briefing. In fact, CareCo has produced its sales data for the product it has unilaterally determined to be at issue, dramatically undercutting its own argument. If CareCo wanted to bifurcate liability and damages, then it should have made a request prior to the beginning of

4

discovery. At this point, bifurcating *only* Flower Manufacturing's access to relevant sales data is fundamentally unfair and CareCo's attempt to bifurcate should be denied.

B. **The Requested Sales Information Is Relevant to Both Liability and Damages**

CareCo refuses to produce sales information for products other than its hanging circle air fresheners because, it argues, those products cannot infringe on Flower Manufacturing's BOMB marks and because, regardless, sales information is only relevant to a damages determination.[1] The sales information requested by Flower Manufacturing is, contrary to CareCo's contentions, fundamental to determining liability under the Lanham Act for trademark infringement. Stepping back and considering the broad context of the protections under the Lanham Act makes this point abundantly clear. Fundamentally, trademark law "pursues two related goals—the prevention of deception and consumer confusion and, more fundamentally, the protection of property interests in trademarks." *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 964 (6th Cir. 1987). It further serves to protect the mark owner's goodwill and reputation. *Id.* Accordingly, trademark law recognizes multiple theories of infringement. *Id.*

One such type of infringement is reverse confusion of sponsorship, a claim dependent on the junior (infringing) user's saturation of the market with a similar mark. As the Sixth Circuit articulated,

> A reverse confusion claim differs from the stereotypical confusion of source or sponsorship claim. Rather than seeking to profit from the goodwill captured in the senior user's trademark, the junior user **saturates the market** with a similar trademark and overwhelms the senior user. The public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets. *See, e.g., Big O Tire Dealers, Inc.*

---

[1] Of course, CareCo's production of sales information for its hanging tag products severely undercuts the assertion that sales data is never relevant at this stage of proceedings and should not be produced until a finding of liability has been made.

5

*v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1371–72 (10th Cir.1977), cert. dismissed, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978); *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1003–04 (2d Cir.1983). *See also International News Service v. Associated Press*, 248 U.S. 215, 247, 39 S.Ct. 68, 75, 63 L.Ed. 211 (1918) (Holmes, J., concurring) ("The ordinary case, I say, is palming off the defendant's product as the plaintiff's; but the same evil may follow from the opposite falsehood,—from saying, whether in words or implication, that the plaintiff's product is the defendant's.... [T]he principle that condemns one condemns the other.").

*Id.* at 964-65.  A finding of trademark infringement based on reverse confusion necessarily depends on a determination of where and how much of the infringing product has been sold.  *See Big O Tire Dealers*, 561 F.2d at 1367 (comparing plaintiff's total net worth of $200,000 to defendant Goodyear's net sales of more than $5.25 billion in assessing reverse confusion claim).  Flower Manufacturing is entitled to understand the scope of CareCo's sales to assess the strength of a reverse confusion theory of liability.

Sales volume may also be a relevant factor in assessing consumer confusion.  Specifically, the volume of infringing sales may lessen or enhance the impact of reported instances of actual confusion in the market.  *See Homeowners Grp., Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100 (6th Cir. 1991) ("[T]he existence of only a handful of instances of actual confusion after a significant time or a significant degree of concurrent sales under the respective marks may even lead to an inference that no likelihood of confusion exists").  Flower Manufacturing must understand CareCo's sales volume in order to assess its claim of actual confusion.

Moreover, the protections of trademark law are not limited to identical products, *Ameritech*, 811 F.2d at 964, and information regarding all of CareCo's air freshener products is thus relevant and discoverable.  Without conceding that CareCo's other air freshener products do

6

30159253.1

not compete directly with Flower Manufacturing's products[2], such a determination is not necessary to a finding of trademark infringement:

> A second kind of infringement is confusion of sponsorship, which occurs where the goods do not directly compete. In this situation, the goods are unrelated enough that no inference arises that they originated from the same source, but the similarity of the trademarks erroneously suggests a connection between the sources; the defendant seeks to capitalize on the plaintiff's goodwill and established reputation. *See, e.g., Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir.1985) (ordinary consumer might well believe defendant restaurant was affiliated with owners of fictional character "Conan The Barbarian" through licensing).

*Id.* Here, whether or not CareCo's non-hanging circle products compete directly with Flower Manufacturing is irrelevant—the striking similarity between the marks suggests a connection between the sources of the products. That determination of sufficient similarity and confusion is one ultimately for the jury, not for CareCo to make in discovery.

CareCo's sales data for all of its air freshener products is therefore relevant to Flower Manufacturing's theories of liability and must be produced.

C. **The Remaining Information Should Be Produced**

In addition to sales information, CareCo objects to the production of other information, including information regarding CareCo's marketing strategy, CareCo's customers, and the manufacturers of CareCo's infringing products. (*See* Ex. 1 (responses to Interrogatories Nos. 4, 5, 6, and 7) and Ex. 2 at pp.6-8, 11 (responses to Requests for Production Nos. 5, 6, 7, and 9).) CareCo objects solely on the basis that the requested information is confidential and Flower Manufacturing is a competitor who could exploit this confidential information.[3] CareCo does not,

---

[2] Flower Manufacturing markets hanging air fresheners for automobiles; CareCo markets, in addition to hanging air fresheners, air freshener sprays and other products designed for and targeted to automobile usage. Clearly, CareCo's products compete with Flower Manufacturing.

[3] The relevance of this information is obvious. For example, all of the requested information goes to the likelihood of confusion element of Flower Manufacturing's claim, which

7

however, seek a protective order; it seeks to completely withhold all such information from discovery.  Relevant information, broadly defined under the Federal Rules, is subject to discovery; good cause may justify a protective order to facilitate discovery of confidential information such as trade secrets.  Fed. R. Civ. P. 26.  Here, at the very least, the Court should consider CareCo's characterization of the requested information as confidential and order production of the responsive information under a protective order.

Counsel for CareCo has expressed an unfounded concern that, even if produced for attorney's eyes only under a protective order, confidential information may be released to Flower Manufacturing or other competitors.  Without any evidence supporting such a concern, a bare assertion of potential misuse carries little weight.  *See, e.g.*, *Nylok Fastener Corp. v. Industrial Nut Corp.*, 122 F.R.D. 512 (N.D. Ohio 1988) ("[D]efendant asserts that it may be harmed by release of trade secrets through discovery. Defendant's bare assertion that plaintiff may misuse certain information sought is unpersuasive.").  The proper course—as is the case in the vast majority of trademark cases, all of which involve potentially sensitive information—is to produce the information subject to a protective order and rely on the representations of counsel.

---

necessarily considers the following factors: (1) Strength of plaintiff's mark; (2) Relatedness of the goods; (3) Similarity of the marks; (4) Evidence of actual confusion; (5) Marketing channels used; (6) Likely degree of purchaser care; (7) Defendant's intent in selecting the mark; (8) Likelihood of expansion of the product lines.  *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988).

30159253.1

## IV. CONCLUSION

For the reasons stated herein, Flower Manufacturing respectfully requests that the Court compel complete responses, without objection, to Interrogatories Nos. 4, 5, 6, and 7 and Requests for Production Nos. 5, 6, 7, 9, and 15.

                                          Respectfully submitted,

                                          HONIGMAN LLP

                                          By: /s/ Andrew M. Pauwels
                                          J. Michael Huget (*pro hac vice*)
                                          Mary A. Hyde (Ohio Bar No. 0084136)
                                          Andrew M. Pauwels (*pro hac vice*)
                                          315 East Eisenhower Parkway, Ste. 100
                                          Ann Arbor, MI 48108
                                          734-418-4254
                                          mhuget@honigman.com
                                          mhyde@honigman.com
                                          apauwels@honigman.com

                                          *Attorneys for Plaintiff*

Dated: February 20, 2019

## CERTIFICATE OF SERVICE

The foregoing document was filed electronically with the Court on February 20, 2019. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                          /s/ Andrew M. Pauwels
                                          Andrew M. Pauwels