**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Flower Manufacturing, LLC,                                    Case No. 3:18CV547

        Plaintiff

        v.                                                    **ORDER**

Careco, LLC,

        Defendant

This is a trademark infringement case.

Plaintiff Flower Manufacturing, LLC (Flower) and defendant Careco, LLC produce air freshening products. Flower markets its products, chiefly, hangtag car air fresheners, using its "Family of Bomb Marks." The family includes, for example, Flower's "Cherry Bomb" mark. Careco sells hanging air fresheners, air freshening sprays, and other products using its "Scent Bomb" mark.

Flower alleges that Careco's "Scent Bomb" mark infringes on its "Family of Bomb Marks" in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*. Flower also raises Ohio statutory and common-law claims against Careco.

The parties have a discovery dispute. Pursuant to my order following a February 13, 2019 telephone conference, they have fully briefed their positions.

**Background**

On November 5, 2018, Careco responded to Flower's discovery requests, which included interrogatories and requests for production of documents. The requests relevant to their dispute are:

- **Request for Production No. 15**. Flower requested annual sales data "[f]or each product sold under [Careco's] SCENT BOMB MARK." (Doc. 18-2 at 11). Careco produced the requested sales data for "its hanging circle air freshener products" (Doc. 20-2) but objected to the request as applied to its other products claiming that such information is: (1) not relevant and (2) "proprietary business information of a competitor." (Doc. 18-2 at 11).

- **Interrogatory No. 4 and Request for Production Nos. 5 and 7**. Flower asked Careco for information about its customers and marketing strategies.

  Specifically, Flower requested that Careco "[d]escribe the target market(s) for each of the goods and services" Careco sells using the Scent Bomb mark, including "the type of consumer(s) and/or customer(s) targeted, the demographic of the consumer(s) and/or customer(s) targeted, and the geographic scope of the target market(s)." (Doc. 18-1 at 6 (Interrog. No. 4)). Flower also requested that Careco produce "[a]ll advertising and promotional DOCUMENTS CONCERNING" goods sold using the Scent Bomb mark and "documents sufficient to identify the channels of trade through which" Careco sells its Scent Bomb products. (Doc. 18-2 at 6 (Reqs. for Production Nos. 5 and 7)).

  Careco responded to the requests by: generally describing its target market (Interrog. No. 4); agreeing to produce "representative samples of its advertising and promotional materials" (Req. for Production No. 5); and agreeing to produce its channels of trade but withholding invoices that would identify customers (Req. for Production No. 7). Otherwise, Careco objected to the requests, asserting that they "seek[] proprietary business information of a competitor." (Doc. 18-1 at 6; Doc. 18-2 at 6).

- **Interrogatory No. 5**. Flower asked Careco to identify its manufacturers. Careco objected to this request arguing that it "seeks proprietary business information of a competitor." (Doc. 18-1 at 5 (Interrog. No. 5)).

On January 30, 2019, Flower sent Careco a letter protesting Careco's objections and asking Careco to supplement its discovery responses. (See Doc. 20-1). Careco did not provide additional information.

Flower sought my intervention via a February 12, 2019 letter. (Doc. 20-2). In a February

13, 2019 discovery conference, I asked the parties to brief their dispute.[1]

## Discussion

Federal Rule of Civil Procedure 26 prescribes the scope of discovery: "Parties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "[I]t is well established that the

scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders*

*Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (internal citation omitted). "Rule 26 is to be liberally

construed to permit broad discovery." *Recycled Paper Greetings, Inc. v. Davis*, 2008 WL

440458, *2 (N.D. Ohio) (Gwin, J.) (citing *United States v. Leggett & Platt, Inc.*, 542 F.2d 655,

657 (6th Cir. 1976)).

## I. The Sales Information Flower Seeks Is Relevant

Careco argues that the sales data Flower requested (other than the information Careco

already produced) is irrelevant to the issue of liability. I disagree.[2]

"[T]o make out a claim for [trademark] infringement," a plaintiff must show:

---

[1] Careco argues in its brief that only Request for Production No. 15 is properly before the court because Flower referenced only that request in its letter requesting a discovery conference. (Doc. 19 at 3). I disagree. In its January 30, 2019 letter, Flower asked Careco to supplement Interrogatories Nos. 4-7 and Request for Production Nos. 5-7, 9, and 15. Flower also addressed those requests in its pre-discovery conference statement to the court. (Doc. 20-3). Accordingly, each of these requests is properly before me.

Requests for Production Nos. 6 and 9 and Interrogatories Nos. 6 and 7 are easily resolved. Careco has indicated that it: (1) has no responsive documents to Request for Production No. 6; (2) has no additional responsive materials to Request for Production No. 9; and (3) it provided a complete response to Interrogatories Nos. 6 and 7. (Doc. 19 at 4-6). I will require Careco to supplement its responses accordingly.

[2] I therefore deny Careco's request to split discovery into a liability phase and a damages phase.

(1) ownership of a specific service mark in connection with specific services [or products]; (2) continuous use of the service mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services [or products].

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991) (citing 15 U.S.C. § 1125(a)).

Courts assess likelihood of confusion by weighing eight factors:

1. strength of the plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent of the defendant in selecting the mark; and
8. likelihood of expansion of the product lines.

*Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) (citing *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1266 (6th Cir. 1985)).

In its opening brief, Flower identifies two alternative trademark infringement theories it plans to pursue: the common "palming off" theory and the "reverse confusion of sponsorship" theory. (*See* Doc. 18 at 5-6).

Courts in palming off cases determine whether consumers will likely be confused "between directly competing goods . . . over the source of their origin." *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F2d 960, 964 (6th Cir. 1987). Careco would have me believe that courts do not review competitors' sales data to assess likelihood of confusion. (Doc. 19 at 8 (collecting cases)). At least one court in this circuit, however, compared relative sales of two companies when determining likelihood of confusion in a palming off case. *See Induct-O-Matic Corp. v. Inductotherm Corp.*, 1982 WL 52120, *2, *4, *6 (E.D. Mich.); *remanded on other grounds*, 747 F.2d 358 (6th Cir. 1984). Moreover, that such information might not be "necessary to determine

a likelihood of confusion" (Doc. 19 at 8) misapplies the discovery standard; the information need only be *relevant* to Flower's claim. Fed. R. Civ. P. 26(b)(1).

The sales information is most relevant to Flower's reverse confusion of sponsorship theory. Plaintiffs advancing this theory allege that "the junior user saturates the market with a similar trademark and overwhelms the senior user. The public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter." *Ameritech, Inc.*, *supra*, 811 F.2d at 964.

The amount of Careco's sales under its Scent Bomb Mark is relevant to determining market saturation (or, as the case may be, lack thereof). For example, the Tenth Circuit in *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1367 (10th Cir. 1977), a reverse confusion case, compared parties' sales data. Similarly, the Third Circuit, likewise in a reverse confusion case, *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 471 (3d Cir. 1994), reviewed the defendant's sales. *See also Pep Boys Manny, Moe & Jack v. Goodyear Tire & Rubber Co.*, 2002 WL 524001, *6 (E.D. Pa.) (same); *Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 956, 974 (D. Minn.) (explaining defendant's sales volume is relevant to reverse confusion theory).

Careco essentially admits that the sales information is relevant to the reverse confusion of sponsorship theory. (*See* Doc. 19 at 10). That this theory might "require substantially more than just sales figures" does not make those figures irrelevant. (*See id.*).[3]

---

[3] Careco also argues that I should bar discovery of the requested sales data because Flower "is not likely to succeed on the merits of the claim," making the sales data irrelevant. (Doc. 19 at 7 (citing *Recycled Paper Greetings, Inc.*, *supra*, 2008 WL 440458 at *2, *4)). I disagree.

In one sentence with no factual analysis, Careco concludes that "there is no likelihood of confusion between the parties' respective marks." (Doc. 19 at 7). This lone assertion does not show Flower is unlikely to succeed on its infringement claim.

## II. Balancing Relevance and Need With Risks of Disclosure

Careco seeks to prevent Flower from discovering the information requested because, Careco maintains, it is confidential. Flower, for its part, offered to negotiate a protective order with Careco. (*See* Doc. 20-1). Careco declined.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by "requiring that a trade secret . . . not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). To determine whether I should allow Flower to obtain the information sought, I must "balance[] the need for [Flower] to have access to relevant and necessary information with [Careco's] interest in preventing a potential competitor" from accessing its confidential material. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir. 2010). "It is within a district court's sound discretion to determine whether" confidential information is "relevant and whether the need outweighs the harm of disclosure." *Id.* (internal quotations and citation omitted).

I must first determine, then, whether the information Flower seeks is relevant and necessary to its claims.

---

Moreover, *Recycled Paper Greetings, Inc.*, *supra*, 2008 WL 440458, which Careco cites, is not like this case. The plaintiff in that case claimed that defendant breached a fiduciary duty and disclosed confidential business information to a third-party competitor. The plaintiff subpoenaed the competitor for confidential business information. The court quashed the subpoenas because of their breadth and because defendant had disclosed much of the requested information already. *Id.* at *4. The court also noted that, in separate but related litigation, a court denied preliminary injunction, finding plaintiff was unlikely to succeed on its fiduciary duty claim or establish that a trade secret existed. Because the materials sought from the competitor went to the issues addressed in the separate litigation, the court found that the burden to the competitor outweighed any need for the information sought. *Id.* at *5.

**A. Flower's Need for the Sales and Customer Information
Outweighs Careco's Interest in Keeping It Confidential**

As explained above, the sales information is relevant to Flower's claim. The sales

information is also necessary for Flower's claim, especially insofar as Flower plans to pursue a

reverse confusion of sponsorship theory, which requires that Flower show that Careco saturated

the market.

The customer and marketing information is relevant and necessary to the likelihood of

confusion analysis, specifically, the "marketing channels" factor:

> Obviously, dissimilarities between the predominant customers of a plaintiff's and
> defendant's goods or services lessens the possibility of confusion, mistake, or
> deception. Likewise if the services of one party are sold through different
> marketing media in a different marketing context than those of another seller, the
> likelihood that either group of buyers will be confused by similar service marks is
> much lower than if both parties sell their services through the same channels of
> trade.

*Homeowners Grp., Inc.*, *supra*, 931 F.2d at 1110.

The court in *Homeowners Group, Inc.* reviewed "ample evidence as to whom the parties'

customers are and the marketing context in which their services are sold," including the parties'

advertisements. *Id.* Accordingly, Careco's customers and its marketing and advertising strategies

are relevant to Flower's claim.

Moreover, I can mitigate Careco's risk of disclosure by requiring that the parties

exchange this information on an "attorneys' eyes only" basis. *See R.C. Olmstead, Inc.*, 606 F.3d

at 269-70 (upholding district court's decision to limit disclosure of confidential discovery to

attorneys and expert witnesses). I will therefore allow Flower to discover the material on the

condition that only attorneys of record in this case may view it.

## B. The Parties Have Not Shown Whether Careco's Manufacturer Information Is Relevant

It is unclear whether Careco's manufacturers' identities are relevant to Flower's claims.

Neither party has identified, and I have not found, legal authority explaining whether

identities of an alleged infringer's manufacturers are relevant in a trademark infringement case.

Yet, I must balance that information's relevance – and its necessity – with Careco's interest in

keeping it secret. *R.C. Olmsted, Inc.*, *supra*, 606 F.3d at 269. I will therefore require the parties to

submit supplemental briefing about this information's relevance and necessity in this case.

## Conclusion

It is, therefore,

ORDERED THAT

1. Defendant Careco, LLC shall produce, by April 1, 2019, the information requested in plaintiff Flower Manufacturing, LLC's Interrogatory No. 4 and Request for Production Nos. 5, 7 and 15. Careco shall produce such information with an "attorneys' eyes only" designation, and only attorneys of record in this case may view the information. Disclosure of material so marked to persons other than attorneys of record in this case shall result in sanctions to be determined after notice is provided to the court that a party violated this order.

2. Plaintiff's brief about the relevance and necessity of the information requested in Interrogatory No. 5 shall be due on or before April 1, 2019; defendant's response to be due on or before April 8, 2019; plaintiff's reply to be due on or before April 15, 2019.

3. Defendant's request to phase discovery is hereby denied.

4. Defendant shall supplement its responses to Interrogatories Nos. 6 and 7 and

   Request for Production Nos. 6 and 9 in accordance with this opinion.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge
